UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD LYNN MCCOY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-CV-00114 JAR |
| | ) |
| UNKNOWN PREE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants John Pree, Richard Waite, Collin Wynn, and Daylon Greene's motion to dismiss the amended. [ECF No. 8]. Plaintiff Richard McCoy failed to file a response to the motion to dismiss after being given an extended time to do so. [ECF Nos. 27-29]. For the reasons discussed below, the Court will deny the motion to dismiss in its entirety.

### Background and Verified Amended Complaint

On January 28, 2022, self-represented plaintiff Richard McCoy, filed his original civil rights complaint, pursuant to 42 U.S.C. § 1983, in this action, along with a request to proceed in forma pauperis. [ECF Nos. 1 and 2]. Before the Court could review plaintiff's complaint pursuant to 28 U.S.C. § 1915, plaintiff submitted an amended verified complaint, signed under penalty of perjury, on a court-provided form on February 14, 2022. [ECF No. 4].[1]

The Court granted plaintiff leave to proceed in forma pauperis and reviewed plaintiff's amended complaint for frivolousness, maliciousness and for failure to state a claim on July 18,

---

[1] In the "Certification and Closing" section of plaintiff's amended complaint, plaintiff certified that to the best of his knowledge, information and belief his complaint was not being presented for an improper purpose, supported by existing law or by nonfrivolous argument, that the factual contentions had evidentiary support and that the complaint otherwise was in compliance with Federal Rule of Civil Procedure Rule 11. He attested in Part V of the complaint that he had exhausted his administrative remedies with respect to his claims at NECC.

2022. [ECF No. 7]. His complaint alleged violations of his Eighth Amendment, as well as state law claims of assault and battery with relation to his incarceration at Northeast Correctional Center (NECC). Plaintiff named the following as defendants in his amended complaint: Director Anne Precythe; Warden Unknown Reddington; C.O. Unknown Pree; Unknown Director of Institutions of Missouri Prisons; C.O. Unknown Wynn; C.O. Greene; Lieutenant Unknown Waite; C.O. Ensley; John Doe Doctor; John Doe Corizon Employee; Unknown Corizon Nurse; and Medical Personnel at NECC.

In his amended verified complaint, plaintiff asserts that on April 6, 2020, he was placed in Housing Unit 1, D-wing, Cell No. 142, and on that date, his cell was "off-line," meaning that it was not supposed to be housing inmates at that time because the toilet would overflow when it was flushed. Plaintiff claims that he was placed in this cell as a "form of punishment" for refusing to accept a cellmate. Plaintiff alleges that he accidentally flushed the toilet in Cell No. 142, and it overflowed, after which time he was given a conduct violation. He states that after being read the conduct violation for overflowing his toilet, he went back to sleep in his cell. "Sometime later," plaintiff claims that he was awoken to being sprayed with pepper spray. Although his amended complaint is unclear as to who sprayed him with pepper spray, he clearly indicates in his Informal Resolution Request (Exhibit B), attached to his amended complaint, that he was maced by defendants Wynn and Ensley, without provocation, while sleeping in his cell.[2] Further, he states that defendants Wynn and Ensley "refused to pull offender out of his cell" even though he couldn't "see and breathe." When reviewing plaintiff's amended complaint, the Court treated this claim as an Eighth Amendment deliberate indifference to medical care claim. Plaintiff claims that he then broke the sprinkler in his cell to assist in clearing the mace, and he slid underneath his bunk.

---

[2]Pursuant to Federal Rule of Civil Procedure 10(c), a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

2

Approximately twenty minutes later, Lieutenant Waite came to plaintiff's cell and asked plaintiff to submit to restraints. Plaintiff does not indicate whether and when he came out from under his bunk and complied with Lieutenant Waite's orders. Rather, he states that he was "pepper sprayed by Lt. Waite [i]n the presence of C/O Ensley, C/O Pree, C/O Greene, and C/O Wynn." Plaintiff states in the amended complaint that he "still complied to restraints," and he was removed from his cell with restraints on.

Plaintiff alleges that he was walked past a restraint bench in D-Wing and escorted to A&B Front Door. At the front port of Housing Unit No. 1, Lieutenant Waite allegedly said, "Hold him against the wall." Plaintiff asserts that defendant Wynn threw him against the wall and tried to force his head down so defendant Waite could use his knee to hit plaintiff in the face. Plaintiff claims that at this point, defendant Waite began using his knee to hit plaintiff in his pelvis and left leg, as well as in his butt and rib cage. He claims that defendants Pree, Greene and Ensley stood and watched as Waite hit him. After plaintiff was allegedly assaulted by defendants Wynn and Waite, he was taken to the restraint bench at "1-A."

As noted above, the Court reviewed plaintiff's amended complaint pursuant to 28 U.S.C. § 1915 on July 18, 2022. The Court issued process on plaintiff's claims, for excessive force violations under the Eighth Amendment against several defendants in their individual capacities. For example, the Court issued process or caused process to issue as to defendants Wynn and Ensley, for allegedly macing plaintiff while he was sleeping, as well as against defendant Waite for macing him, without provocation, while he was in his cell. The Court also issued process on defendants Wynn and Waite for excessive force for violation of the Eighth Amendment, for allegedly throwing plaintiff against the wall, forcing his head down and using his knee to hit

plaintiff in the pelvis, leg, butt and rib cage. The Court also issued process on plaintiff's claims of state law assault and battery against defendants Ensley, Wynn and Waite.

Similarly, the Court issued process, or caused process to issue, on plaintiff's claim for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against defendants Wynn and Ensley, in their individual capacities, regarding plaintiff's claim that these defendants failed to take him out of his cell and provide medical care to him after macing him.

Last, the Court issued process on plaintiff's claims, that defendants Ensley, Pree and Greene stood and watched, and/or failed to intervene, in violation of the Eighth Amendment, while defendant Waite maced plaintiff and while defendant Wynn threw plaintiff against the wall.

The Court dismissed plaintiff's official capacity claims against the State of Missouri employees, as neither a State nor its officials acting in their official capacity are persons under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Similarly, the official capacity claims against the Corizon employees were also dismissed because plaintiff had failed to establish Corizon's liability for the alleged misconduct. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (describing claims brought against corporations acting under color of state law).

The Court additionally dismissed plaintiff's claims against defendants Anne Precythe, Warden Reddington, and Unknown Director of Institutions of Missouri Prisons due to plaintiff's failure to allege specific allegations against these defendants. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

Last, the Court dismissed plaintiff's claims against John Doe Doctors and an Unknown Corizon Nurse at NECC due to his failure to specifically outline that he suffered from an objectively serious medical need that was deliberately disregarded by these individuals.

4

A waiver of service letter was issued to the Missouri Attorney General's Office on July 19, 2022, on behalf of defendants Pree, Wynn, Green, Ensley and Waite. [ECF No. 10]. Plaintiff sought reconsideration of the partial dismissal of his amended complaint on August 11, 2022, and he sought leave to file a second amended complaint on August 15, 2022. [ECF Nos. 12 and 17]. The Court denied plaintiff's motions on August 19, 2022. [ECF Nos. 19 and 22].

On September 15, 2022, counsel for defendants John Pree, Richard Waite, Collin Wynn and Daylon Green entered her appearance and filed a motion to dismiss in this matter. [ECF Nos. 24 and 25]. In the Memorandum in Support of the Motion to Dismiss defendants argue that dismissal of this action is appropriate for two reasons: (1) plaintiff has failed to exhaust his failure to intervene claims against defendants John Pree and Daylon Greene; and (2) defendants are entitled to qualified immunity.

## Review of Plaintiff's Administrative Remedies
## Attached to His Amended Complaint

Plaintiff asserts that he was subjected to constitutional violations of excessive force, failure to intervene and deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, on April 6, 2020. He also alleges he was subjected to violations of Missouri State law assault and battery on that same date.

Plaintiff filed his first Institutional Resolution Request (IRR), NECC 20-410 within fifteen (15) days of the alleged incident, on April 14, 2020. He stated the following in his IRR:

> Assault: C/OIII Waite, C/O1 Wynn, C/O1 Pree, C/O1 Ensley & C/O1 Green on 4-6-20 around about 10:50 pm I was maced by C/OIII Waite after breaking 1-D-#142 sprinkler head. After being cuffed up and while escorting offender outside of HU#1 I was assaulted by C/OIII Waite in front of A&B side front entrance. This officer repeatedly kneed me in my left front rib cage, left thigh, left knee & buttock area 6 to 7 times while C/O1 Wynn held me against the threshold. C/O1 Ensley, C/O1 Pree, C/O1 Green were present during assault and kept silent about the incident.
>
> 1) All staff to be terminated immediately

2) Camera footage in front of HU#1 to be reviewed and saved
3) This matter to be investigated immediately & charges to be brought against staff

The NECC 20-410 IRR was discussed with plaintiff on April 15, 2020, by Case Manager Gilmore, who indicated the IRR was "not resolved" and plaintiff wanted to "proceed with the IRR." On May 5, 2020, Functional Unit Manager Preston responded to the IRR and stated, in pertinent part:

> Your Informal Resolution Request has been received, reviewed and investigated. You claim you were assaulted during an escort by COIII Waite. You request the officers involved by held accountable. You are asking for staff to be terminated, camera footage to be looked at, and that an investigation and charged be brought against staff.
>
> Investigation into your complaint has been made. Evidence shows that on 04/06/2020 you were observed by an officer in your cell standing on the sink with a flood going on in your cell. You were given multiple directives to submit to mechanical restraints. You refused to comply with any of the directives you were given so, you were given a small blast of pepper spray to try to get you to comply. At that time you finally submitted to the restraints. While you were being escorted you began to resist and tried to overpower staff. During the struggle you were put up against the wall near A/B sally port to try to gain control of the situation. You were still refusing to comply so one of the officers applied to leg distractions to your outer upper left hand side of your leg. This was effective and you were finally taken to the bench in A-wing.
>
> The Initial Review Committee met and agreed the force utilized was the minimal force necessary to gain and maintain control of the situation.
>
> No excessive use of force was used. Staff used only the amount necessary to gain and maintain control of the situation you created.

In his second IRR, NECC 20-472, filed on April 29, 2020, or approximately fifteen (15) days after his first IRR on the issue, plaintiff stated:

> Assault: C/O1 Ensley & C/O1 Wynn 4/6/20 HU#1 – D Wing #142 During times of 9:55 p.m. through 11:15 p.m.
>
> C/O1 Ensley maced offender through food port while sleeping in 1-D-#142 w/o any sergent [sic] present, nor with reason. Policy states "/y have to be threatening harm to myself or another" which clearly was not the case. The

6

> camera footage will show my allegations. C/O1 Wynn was present and part of act.
>
> 1) Keep all camera footage from dates & times for later civil suit
> 2) Keep parties be held accountable
> 3) Incident be investigated immediately

The IRR was discussed with plaintiff on June 9, 2020, by Case Manager Ream, who indicated the IRR was "not resolved" and the "offender wanted to proceed with the IRR." On June 11, 2020, Functional Unit Manager Preston responded to the IRR, stating:

> Your claims have been reviewed and investigated. Your complaint states that you had a Use of Force initiated on your while you were asleep in your assigned Bunk.
>
> According to the statement provided by CO1 Ensley, you were not asleep in your bunk, but rather standing on your sink with a string attached to the *fire suppression sprinkler* in your cell. You were given several directives to get down from your sink and submit to wrist restraints. You did not follow these directives and instead broke the sprinkler head causing your cell and the surrounding area to be flooded with water from the *fire suppression system*. Pepper spray was deployed so that control of the situation could be regained.
>
> According to the final Use of Force Report you were noncompliant with the directives given to you by CO1 Ensley which resulted in the initial Use of Force. You continued your noncompliant behavior after you were finally removed from you[r] assigned cell which resulted in a furtherance of the Use of Force. This Use of Force was reviewed by a Review Committee and found to be justified and in accordance with the Use of Force Policy.

Plaintiff filed his grievance regarding NECC 20-472 on June 22, 2020. The grievance stated:

> CO1 Ensley & Co1 Wynn maced me while sleep[ing] in cell 1D - #142 (which was offline w/o working water). I never should have been in this cell.
>
> CO1 Ensley used pepper spray while I was asleep w/o a Sgt. present, per policy: I never threatened staff or myself which policy states so how is this justified???
>
> This is excessive use of force as well as racial agenda.
>
> Note: I never resisted once. I exited 142 which led to C/OIII Waite kneeing me several times in waist and sides while in restraints in front of HU #1.

7

The Warden's Response to grievance NECC 20-472 was dated July 6, 2020. The handwriting from the respondent is illegible, so the Court is unable to tell who wrote the response. However, the response stated:

> Your complaint has been received and reviewed. You claim that Corrections Officer I Ensley and Corrections Officer I Wynn maced you while you were asleep in cell 1D 142, while did not have working water. You say you never should have been in that cell. You claim excessive use of force as well as a racial agenda.
>
> Investigation into your complaint has been made. Evidence shows that on April 6, 2020, CO1 Ensley and CO1 Wynn attempted to escort you to D wing bench to finish cleaning up toilet water, from where you had flooded your cell earlier in the evening. You refused to submit to restraints and jumped on your sink and tied a string around the sprinkler head. You were directed by CO1 Ensley to comply. You refused and pepper spray was applied while you jumped off the sink, breaking off the sprinkler head. You were then directed by COIII Waite to submit to restraints, did not comply and pepper spray was once again applied. You then complied to wrist restraints and was then escorted by COIII Waite and CO1 Wynn. During the escort, you became noncompliant, resisting the escort, resulting in a higher level of use of force, which ended when staff were finally able to place you on the A wing bench.
>
> Review of the incident found no excessive use of force was used. Only the minimal amount necessary to control your actions. Evidence shows that staff simply responded to your behavior.

On July 22, 2020, plaintiff filed grievance appeal NECC 20-472. The grievance appeal states:

> Evidence on 4-6-20 shows offender in had restraints complying and walking to A-Wing HU#1 and C/O1 Wynn and C/OIII Waite began to knee offender in ribs.
>
> 1) Can the state show me proof w[h]ere it states staff can use this type of tactic as "use of force"
> 2) How can one resist when walking in restraints?
>
> I will p[u]rsue civil action!
>
> Save all camera footage of incident and dismiss & expunge CDV.

On September 1, 2020, plaintiff filed his third IRR relative to the events on April 6, 2020 [NECC 20-1021]. His IRR stated:

8

> I've filed an IRR pertaining [to] an incident that occurred on 4/6/20 where I was assaulted by Lt. Waite [by kicking and kneeing me). It's on Lt. Waite, C/O1 Pree, CO1 Ensley & CO1 Wynn. Ms Gilmore brung the papers to my door showing me that she had these. But yet I've never received anything. I'd like to know where my IRR is. I turned it into caseworker Gilmore.
>
> 1) I be informed what stage I'm in on my grievance process in this matter
> 2) All parties be held responsible

The IRR was discussed with plaintiff on October 27, 2020, by Case Manager Twellman. Plaintiff asked the case manager why it took over two and a half months for his IRR to be answered. On October 3, 2020, plaintiff signed a Category 3 Due Process Document relative to his IRR and asked where his grievance was for NECC 20-410. His question was left unanswered.

On November 14, 2020, plaintiff filed grievance NECC 20-1021. It stated:

> I filed grievance NECC 20-410 an[d] turned it in but never heard anything back. I have to complete the grievance process in order to proceed with my 1983 civil suit. My grievance 20-472 was on C/O1 Ensley. Whereas my grievance NECC 20-410 was on Lt. Waite and CO1 Wynn.
>
> Note: CO1 Greene & CO1 Pree & CO1 Ensley was present during this assault of CO1 Wynn trying to force my head down to be kneed in my face by COII Lt. Waite which Kalee'd me UFC style to ribs, side & buttocks.
>
> Which in return CCM Ream told me that Central Office viewed the footage to both use of force and deem them as justifiable.

On December 3, 2020, the Warden at NECC filed a response to grievance NECC 20-1021. It stated, in pertinent part:

> Your complaint has been received and reviewed. You claim you never received a response on the grievances you filed on your claimed assault by Lt. Waite. You want to know what stage your grievance is on this issue.
>
> Investigation into your complaint has been made. Evidence shows that according to records, you have filed NECC 20-410 and NECC 20-472 on this issue. You have completed the grievance process on NECC 20-472. You signed your IRR NECC 20-410 at the IRR level and it never went any further. NECC 20-472 was signed off after the appeal was complete on 9/10/20 by you.

9

> Duplicate complaints are prohibited. Specific issues or incidents will be addressed only once by an IRR form, offender grievance form or an offender grievance appeal form, per D5-3.2 Offender Grievance policy.

Plaintiff filed a grievance appeal NECC 20-1021 on December 22, 2021. In his appeal he stated:

> I filed an IRR on grievance issue NECC 20-410 an[d] the institution intentionally lost my paperwork. So I'm filing this grievance in response to that IRR. See IRR & Grievance. Where I was assaulted by staff, Lt. Waite, CO1 Wynn & CO1 Pree.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555, 597 n.3. *See also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).

10

## Discussion

### A. Defendants' Request to Dismiss the Failure to Intervene Claims Against Defendants John Pree and Daylon Greene Based on Plaintiff's Alleged Failure to Properly Exhaust his Administrative Remedies

Defendants John Pree and Daylon Greene argue plaintiff has failed to properly exhaust his administrative remedies as to the failure to intervene claims against them as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Specifically, defendants assert that plaintiff has failed to mention them in what they believe to be his only fully exhausted set of administrative remedies, NECC 20-472.

Although plaintiff has failed to respond to the motion to dismiss, the Court is obligated to point out that plaintiff filed a verified amended complaint in this action attesting that he fully exhausted his administrative remedies at NECC. Further, as part of Federal Rule of Civil Procedure 10(c), his administrative remedies he filed at NECC and that were attached to his verified complaint are considered part of the record for purposes of this proceeding.

Plaintiff plainly stated in his administrative proceedings which began on September 1, 2020, with the filing of NECC 20-1021, that he believed he had filed his grievance as to NECC 20-410 and that the MDOC had lost his grievance.[3] There is some credence for his belief in the attached record as the Case Manager who discussed Institutional Resolution Request NECC 20-410, Gilmore, noted on the IRR after discussing the IRR with plaintiff that the IRR was "not resolved" and plaintiff wanted to "proceed with the IRR." In fact, plaintiff stated in Institutional Resolution Request NECC 20-1021 that he believed he "was on the grievance process." He later filed a grievance as to NECC 20-1021 indicating he had "filed a grievance" on NECC 20-410, but "he never heard back." Surprisingly, the response to plaintiff's NECC 20-410 grievance failed to

---

[3] As noted *infra*, Institutional Resolution Request NECC 20-410 asserted claims against defendants Waite, Wynn, Ensley, Pree and Greene.

11

indicate that plaintiff never filed a grievance as to NECC 20-410, but instead indicated that plaintiff "…signed [his] IRR NECC 20-410 at the IRR level and it never went any further." This response does not support dismissal of claims in this lawsuit on a failure to exhaust basis, but instead appears to create a factual dispute as to whether plaintiff properly exhausted his administrative remedies with respect to NECC 20-410.

The Eighth Circuit has found administrative remedies to be "unavailable" where prison officials prevented inmates from utilizing the grievance procedure or complying with the necessary procedural requirements. *See Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (holding remedy unavailable where prison officials misled inmate by advising him not to file a formal grievance until he received a response to his informal complaint); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001) (holding that "once [prison officials] failed to respond to [prisoner's informal resolution request], no further administrative proceedings were 'available' to him"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding remedy unavailable when prison officials denied prisoner's requests for grievance forms); *see also, Boyd v. Doe,* 746 F. App'x 599, 600 (8th Cir. 2018) ("A record keeper's declaration that a prisoner did not exhaust a grievance is insufficient to establish non-exhaustion as a matter of law when the prisoner makes sworn assertions that he took the necessary steps to exhaust.");*McPeek v. Blanchard*, 670 F. App'x 424, 424-25 (8th Cir. 2016) (an inmate's affidavit, that he filed a grievance that the defendants lost or never responded to, created a sufficient factual dispute to prevent dismissal for non-exhaustion); *Conner v. Doe*, 258 F. App'x 304, 304 (8th Cir. 2008) (grievance officer's declaration that there was no record of Conner's having filed any grievances "was insufficient to establish failure to exhaust in the face of Conner's assertion ... that he had filed at least two grievances but did not receive copies of them or responses to them").

In this instance, from the facts as outlined above, there is a factual dispute as to whether plaintiff was prevented from properly exhausting his administrative remedies as to all of his claims in this lawsuit. Accordingly, the Court will decline to grant dismissal of the failure to intervene claims based on plaintiff's purported failure to exhaust his administrative remedies.

### B. Defendants' Request for Qualified Immunity

Defendants also move for dismissal of this action based on qualified immunity. "Qualified immunity shields government officials performing discretionary functions from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine whether defendants are entitled to dismissal based on qualified immunity, the Court must determine whether plaintiff has stated a plausible claim for violation of a constitutional or statutory right, and whether the right was clearly established at the time of the alleged infraction. *See id.* "To be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (citation omitted).

In their "Statement in Support of Motion to Dismiss," defendants contend that the amended complaint fails to state plausible Eighth Amendment claims of excessive force against defendants

13

Wynn and Waite.[4] They offer their version of the relevant events, including that plaintiff purportedly flooded his own cell, popped his own sprinkler in his cell, and was given a conduct violation for damage to MDOC property. [ECF No. 26, p. 7]. They argue that taking these actions by plaintiff in consideration, defendants' actions were merely done to maintain the safety and security of the institution. *Id.*

Defendants' arguments are not well taken. The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). In this context, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically").

Accepting as true the facts in the verified amended complaint and construing them in plaintiff's favor as is required at this stage, the Court concludes that plaintiff has stated plausible Eighth Amendment claims of excessive force against Wynn and Waite. Additionally, at the time of the relevant events, the contours of that right were sufficiently clear, and the unlawfulness of the conduct described in the verified amended complaint would have been apparent to a reasonable official. As set forth above, plaintiff clearly set forth in his verified amended complaint that defendant Wynn maced him while he was sleeping and defendant Waite maced him without provocation while he was in his cell. He also asserted that defendants Wynn and Waite threw him against the wall, forced his head down and hit him with their knees in the pelvis, leg, butt and rib

---

[4]These are the only claims addressed by defendants in their request for qualified immunity.

cage. For these reasons, the Court concludes that defendants have failed to show that they are entitled to qualified immunity on the face of the amended complaint.

Additionally, defendants cannot demonstrate that the amended complaint fails to state a claim upon which relief may be granted. Therefore, defendants have failed to establish entitlement to dismissal pursuant to Rule 12(b)(6).

Accordingly,

**IT IS HEREBY ORDERED** defendants' motion to dismiss [ECF No. 25] is **DENIED.**

**IT IS FURTHER ORDERED** that an appeal from this Order shall not be taken in good faith.

Dated this 10th day of July, 2023.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE